IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MINER'S COLFAX MEDICAL CENTER,

    Plaintiff,

vs.                                                                   Civ. No.  05-634 JP/RHS

SALMON BAY DESIGN GROUP,
PROFESSIONAL PRACTICE ENVIRONMENTS, INC.,
JOHN CRANE, and
DANIEL R. DIERKS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 10, 2006 Defendants filed a Motion for Summary Judgment and Supporting Brief ("SJ Motion") (Doc. No. 73).  In the SJ Motion, Defendants requested summary judgment on all of Plaintiff's claims.  Plaintiff filed an opposition to the SJ Motion on July 28, 2006 ("Response") (Doc. No. 80), arguing that it had stated valid claims and that Defendant's affirmative defenses were inapplicable.  Defendants filed a reply in support of the SJ Motion on August 18, 2006 (Doc. Nos. 81-82).  At a pretrial conference on October 26, 2006, Plaintiff was represented by attorneys Jerome Marshak and David K. Thomson; Defendants were represented by attorney John M. Wells.  The Court heard oral arguments concerning the SJ Motion.  On November 3, 2006 the Court entered an Order (Doc. No. 90) which disposed of several of the issues raised in the SJ Motion, but which specifically reserved ruling on the SJ Motion as it related to Plaintiff's breach of contract and express warranty claims.  The Court now grants the SJ Motion in part, and denies it in part, as to the remaining issues.

*Background*

Plaintiff Miner's Colfax Medical Center ("MCMC"), as owner, and Defendants Salmon Bay Design Group and Professional Practice Environments, Inc. ("Salmon Bay/PPE"), a joint venture, as architect, signed a professional services agreement effective as of September 1, 2002. Salmon Bay/PPE agreed to plan and design a renovation and remodel of the Miner's Colfax Medical Center Acute Care Facility located in Raton, New Mexico. The contract outlined the parties' duties and responsibilities for the multiple phases of the project and included provisions regarding the standard of care to be used in conjunction with the project (Ex. B to Defendants' SJ Motion at ¶ 2.0.6) as well as the Maximum Allowable Construction Cost ("MACC"), which is defined as "the total sum available for construction purposes . . ." *Id*. at ¶ 1.3. The MACC was originally set at $9.6 million. *Id*. at ¶ 5.1. New cost projections following the signing of the contract set the cost of the project at approximately $15 million. Ex. C to Defendants' SJ Motion at 76:25 - 79:6.

In January or February 2003, newly-elected Governor Bill Richardson replaced the MCMC Board of Trustees with a new Board, which then began discussions with Salmon Bay/PPE to scale back the scope of the design project. Ex. E to Defendants' SJ Motion. Salmon Bay/PPE eventually presented MCMC with four revised design options, and MCMC selected Option C, which had a total construction cost of approximately $12 million, including a "Design/Construction Contingency." Ex. 1 to Plaintiff's Response. Work progressed on the design project, and the "Design Development Phase" was completed by September 30, 2003. Ex. 9 to Plaintiff's Response. On October 21, 2003 and again on January 26, 2004, MCMC's representative Margaret Ann Mileta-Mattorano ("Ms. Mileta") requested cost estimates from

Salmon Bay/PPE. Ex. 27 to Plaintiff's Response at ¶ 15. Salmon Bay/PPE did not provide the requested information. *Id*.

The official MACC was subsequently increased to $12 million on February 3, 2004 through agreement of the parties. Ex. D to Defendants' SJ Motion. On March 30, 2004 Defendant John Crane, president of Salmon Bay/PPE, sent a letter informing MCMC that the cost of the project would exceed the $12 million MACC. Ex. Z to Defendants' SJ Motion. On May 14, 2004 Defendant Crane attended a meeting of the MCMC Board of Trustees and submitted two new cost estimates of approximately $15 million and $15.7 million. Defendants' Uncontested Material Fact ("DUMF") No. 17. In a letter dated May 17, 2004 MCMC informed Salmon Bay/PPE that the MACC for the project would remain at $12 million. Ex. S to Defendants' SJ Motion. On June 4, 2004 Defendant Crane wrote to MCMC and reiterated his position that the existing MACC of $12 million was not feasible, and that Salmon Bay/PPE could not "ethically agree to go to bid with a published MACC of $12 million." Ex. T to Defendants' SJ Motion. Referring back to the contract, Defendant Crane stated his opinion that MCMC's only feasible option was to approve an increase to the MACC. *Id*. Having received no response to Defendant Crane's June 4, 2004 letter, Salmon Bay/PPE sent a follow-up letter dated June 10, 2004 in which it terminated the contract under the "without cause" provision of the contract. Ex. Y to Defendants' SJ Motion.

*Standard for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Oliveros v. Mitchell*, 449 F.3d 1091, 1095 (10th Cir. 2006). The moving party bears "the initial burden to show that there is an absence of evidence to support the nonmoving party's case." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quotation marks and citation omitted). If the moving party meets this initial burden, "it falls to the [non-moving party] to identify specific facts that show the existence of a genuine issue of material fact." *Id*. (quotation marks and citation omitted). In demonstrating the existence of a genuine issue of material fact, the non-movant may not rely on "the mere allegations or denials" asserted in the party's pleading. Fed. R. Civ. P. 56(e). Rather, through affidavits, depositions, or answers to interrogatories, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*.

*Plaintiff's Breach of Contract and Breach of Warranty Claims*

I. Breach of Contract

A. <u>Whether Defendants failed to provide Plaintiff with a refined statement of probable construction cost at the end of the Design Development Phase of the project</u>

The parties' contract specifically requires a refined statement of probable construction cost at the completion of the Design Development Phase of the project.[1] Ex. B to Defendants' SJ Motion at ¶ 2.3.2. Defendants argue that Defendant Crane and Plaintiff's representative Ms.

---

[1] Defendants contend that Plaintiff's allegation regarding the failure to provide this refined statement of cost is not set forth in the Second Amended Complaint. Paragraph 45 of the Second Amended Complaint, however, clearly discusses Defendants' alleged breach of the contract following the end of the Design Development Phase of the project. Because the alleged failure by Defendants to provide a refined cost estimate is tied to Plaintiff's express claim that Defendants did not inform Plaintiff when the project would exceed the MACC, the Court finds that Plaintiff's allegation concerning the refined cost estimate can reasonably be inferred from the Second Amended Complaint.

Mileta agreed to waive this provision of the contract.  Plaintiff denies that Ms. Mileta ever made such an agreement with Defendant Crane.  Ex. 27 to Plaintiff's Response at ¶¶ 16 - 17.  Defendants concede that there is a genuine issue as to this material fact, and the Court accordingly will deny Defendant's SJ Motion on this claim.

B.  <u>Whether Defendants failed to notify Plaintiff immediately in writing when Defendants determined that the plans for the renovation would exceed the MACC</u>

The language of the contract makes clear that the mutability of the project's cost was an area of concern for the parties.  Contract provisions regarding each of the various phases in developing the project include the following language: "Should the Architect at any time conclude that the budget and the scope of the work to be accomplished are incompatible, the Owner shall be notified immediately in writing, with proposed recommendations to reconcile the incompatibility."  Ex. B to Defendants' SJ Motion at ¶¶ 2.2.3, 2.3.2, and 2.4.3.  Defendants note that they first advised Plaintiff on March 30, 2004 that the project's budget would exceed the MACC, and that they again notified Plaintiff, in writing, on May 15, 2004 that the existing MACC was no longer feasible.  DUMF Nos. 16-17.  Defendants contend that there is no evidence that they had concluded that the MACC was not feasible prior to March 30, 2004 or that they failed to notify Plaintiff immediately when they determined that the project would exceed the MACC.

In support of its claim that Defendants failed to notify Plaintiff immediately when Defendants determined that the plans for the renovation would exceed the MACC, Plaintiff proffers the opinions of its two expert witnesses Jon Balis and Doug Majewski.  Mr. Balis' report includes cost estimates for the project as of September 2003 and October 2004.  Ex. 15 to

5

Plaintiff's Response. Mr. Majewski's report states that Defendants should have prepared a refined statement of probable construction cost at the completion of the Design Development Phase as required by the parties' contract at ¶ 2.3.2. Ex. 14 to Plaintiff's Response. According to an invoice from Defendant PPE, the Design Development Phase was 100% complete by September 30, 2003. Ex. 9 to Plaintiff's Response. Utilizing Mr. Balis' estimates, Mr. Majewski concludes that had Defendants prepared a cost estimate immediately after September 30, 2003, they would have and should have concluded long before March 30, 2004 that the project could not be completed within the MACC. Although Plaintiff has not submitted any evidence showing that Defendants had actually concluded prior to March 30, 2004 that the MACC was not feasible, Plaintiff has presented evidence from its architectural expert that Defendants should have made this conclusion prior to March 30, 2004, under Defendants' obligation to perform their duties "in accordance with the standards of the profession." Ex. B to Defendants' SJ Motion at ¶ 2.0.6. Under New Mexico law, the standard of care for professional services "is measured by the duty to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Adobe Masters, Inc. v. Downey*, 118 N.M. 547, 548, 883 P.2d 133, 134 (1994).

Defendants challenge Mr. Majewski's report on two grounds. First, Defendants argue that the report contains impermissible legal conclusions drawn by Mr. Majewski. While Mr. Majewski does comment on the contractual obligations in the parties' contract, his statements can be understood as a professional architect's opinion on what a "well-qualified professional[]

6

practicing under similar circumstances" might expect, and not as an expression of a legal opinion.[2]

Second, Defendants contend that the report does not qualify as appropriate evidence under the standard outlined in *Adobe Masters*. Seen in the light most favorable to Plaintiff, however, Mr. Majewski's report implies that the well-qualified professional contemplated by *Adobe Masters* would have concluded by approximately September 30, 2003 that the existing MACC and the scope of the work to be accomplished were incompatible. The Court finds that Plaintiff has satisfied its burden of demonstrating that a genuine issue of material fact exists as to whether Defendants should have concluded prior to March 30, 2004 that the project could not be completed within the existing MACC. *Oliveros*, 449 F.3d at 1095. Accordingly, Defendants' SJ Motion will also be denied on this issue.

C.   Whether Defendants failed to provide Plaintiff with cost estimates upon Plaintiff's request

As part of its claim for breach of contract, Plaintiff asserts that Defendants failed to provide additional construction cost estimates after about September 30, 2003 despite several requests by Plaintiff. More specifically, Ms. Mileta testified at her deposition that Defendants failed to comply with her request in January 2004 to produce a detailed cost estimate for a March 2004 meeting in accordance with paragraph 2.4.2 of the contract. Ex. A to Defendants' Reply at 254 - 262. Paragraph 2.4.2 calls for the architect of the project to conduct a briefing upon the completion of the bidding documents. At that briefing, the architect is to "furnish to the [Plaintiff] a detailed cost estimate." Ex. B to Defendants' SJ Motion.

---

[2] In addition, Defendants' concerns may be addressed by an appropriate jury instruction limiting the reach of Mr. Majewski's opinion.

7

Defendants argue that Plaintiff was not entitled to any cost estimate between January and March 2004 because the bidding documents for the project were not completed.  However, Ms. Mileta stated in her deposition that the March 2004 meeting was intended to be the briefing contemplated in paragraph 2.4.2 of the contract.  Ex. A to Defendants' Reply Brief at 261.  Ms. Mileta's deposition testimony, seen in the light most favorable to Plaintiff, raises a genuine issue of material fact as to the status of the bidding documents, the nature of the meeting that was to be held in March 2004, and whether Defendants were obligated to provide a detailed cost estimate at that time.  *Oliveros*, 449 F.3d at 1095.  Therefore, Defendants' SJ Motion also will be denied on this issue.

D.      Whether Defendants failed to design a project within the MACC

The contract between the parties charges the architect with the responsibility of bringing the project within the MACC.  Ex. B to Defendants' SJ Motion at ¶¶ 2.2.3, 2.4.3.  Plaintiff has alleged that Defendants breached the contract by failing to provide Plaintiff with plans for a project that could be built within the MACC.  The MACC is discussed in great detail in Article 5 of the contract.  Of particular relevance is ¶ 5.2.4, which states that when "an evaluation prepared by the Architect indicates that the Project exceeds the MACC, the provisions outlined in this paragraph shall apply."  Ex. B to Defendants' SJ Motion at ¶ 5.2.4.  The outlined provisions require the Plaintiff to select from three possible options:

"A.     Give written approval of an increase in the MACC,
 B.     Authorize re-bidding the Project within a reasonable time, or
 C.     Cooperate with the Architect in revising the Project scope and, as required, to reduce the Probable Construction Cost."

*Id.*

Defendants contend that while they were bound to "apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances[,]" *Adobe Masters*, 118 N.M. at 548, 883 P.2d at 134, in attempting to keep the project within the MACC, the only obligation they had under the contract once the MACC was exceeded was to inform Plaintiff of any incompatibilities between the MACC and revised cost estimates. Furthermore, Defendants assert that Plaintiff's only remedy following such a revelation was to select one of the three options quoted above.

Concerning its breach of contract claim, Plaintiff only states that "[t]he facts that support this allegation are Mr. Balis's opinions coupled with the entire history of Defendants constantly exceeding MACC from the very inception of the project." Plaintiff's Response at 16. Mr. Balis' opinion details cost estimates for the project between May 2003 and October 2004. Ex. 15 to Plaintiff's Response. For "the entire history of Defendants constantly exceeding MACC[,]" Plaintiff cites to Ms. Mileta's affidavit at paragraphs 2 - 8. Plaintiff's Response at 16. Neither Mr. Balis' report nor Ms. Mileta's affidavit support Plaintiff's claim that failure to design the project within the MACC constituted a breach of the language of the contract.

Plaintiff has not pointed out any contractual language requiring the project to be completed within the MACC. Indeed, the clear language of the contract addresses situations in which the MACC might be exceeded, and describes the only available remedies for those situations: the three options identified in paragraph 5.2.4 of the contract. The parties have not argued that the language of the contract is ambiguous. "When a contract or agreement is unambiguous, we interpret the meaning of the document and the intent of the parties according to

9

the clear language of the document, and we enforce the contract or agreement as written." *Espinosa v. United of Omaha Life Ins. Co.*, 2006 -NMCA- 075, 139 N.M. 691, 137 P.3d 631, 639 (N.M. Ct. App. 2006). Plaintiff has failed to demonstrate how Defendants breached the plain language of the contract by failing to design a facility within the MACC. Because Plaintiff has neither alleged that Defendants refused to abide by the conditions described in paragraph 5.2.4 nor offered any evidence in support of this claim, the Court concludes that Plaintiff has not identified any facts that establish the existence of a genuine issue of material fact. *Munoz*, 221 F.3d at 1164. Therefore, Defendants' SJ Motion will be granted as to this claim.

## II. *Breach of Warranty*

Related to Plaintiff's fourth claim for breach of contract is Plaintiff's claim for breach of warranty, in regard to which Plaintiff alleges that Defendants breached the express warranty in the contract by "failing to provide the Medical Center with plans for a renovation within MACC." Second Amended Complaint at ¶ 48. In its Response, Plaintiff expands upon this claim by arguing that the breach of warranty claim extends to Defendants' "continuous pattern of failure to comply with the MACC, even after the MACC was increased." Plaintiff's Response at 16. At issue is the warranty provision of the contract, which states:

> Standard of Care: The Architect warrants that he and his employees shall possess the experience, knowledge, and character necessary to qualify them individually for the particular duties they perform in connection with the services to be performed under this Agreement. These services shall be performed in accordance with the standards of the profession.

Ex. B to Defendants' SJ Motion at ¶ 2.0.6. Under New Mexico law, a party claiming breach of warranty "must prove the existence of a warranty, the breach thereof, causation, and damages."

10

*Camino Real Mobile Home Park Partnership v. Wolfe*, 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995).

Defendants assert that Plaintiff has not presented any evidence that Defendants breached this express warranty to perform "in accordance with the standards of the profession," or that Defendants failed "to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Adobe Masters,* 118 N.M. at 548, 883 P.2d at 134.  As Defendants correctly note, any testimony concerning the standard of care required of a reasonably well-qualified architect must come from a professional architect.  *See 103 Investors I, L.P. v. Square D Co.*, -- F.3d --, 2006 WL 3598392, *4 (10th Cir. Dec. 12, 2006) (quoting Fed. R. Evid. 702)*; see also State v. Torres*, 1999 -NMSC- 010, 127 N.M. 20, 34, 976 P.2d 20, 34 (1999) ("[A] witness must qualify as an expert in the field for which his or her testimony is offered . . .").

Plaintiff's position is that Defendants did not perform "in accordance with the standards of the profession" because their cost estimates for the project continuously exceeded the MACC.  As supporting evidence, Plaintiff simply notes that "Ms. Mileta will testify about [this issue]," and that "Mr. Majewski will testify concerning standards and obligations of an architect to provide cost information to its client and the failure of Defendants to do so."  Plaintiff's Response at 16-17.  Plaintiff also notes that "Mr. Balis will testify as to how his cost estimates show that Defendants' plans grossly exceeded MACC from the inception of Option C and how Defendants' internal cost estimates were deficient." *Id.* at 17.

It is undisputed that Ms. Mileta and Mr. Balis are not professional architects, and consequently they are not qualified to opine on the standard of care in the architectural profession.

11

*103 Investors I, L.P.*, 2006 WL 3598392, *4. While Defendants do not dispute that Plaintiff's expert Mr. Majewski is a professional architect, his report is limited in scope and Plaintiff has only offered his testimony on the "standards and obligations of an architect to provide cost information to its client and the failure of Defendants to do so." Plaintiff's Response at 16-17. Whether or not Defendants provided cost information to Plaintiff has little, if anything, to do with the question of whether the Defendants met the standard of care of the architectural profession in failing to prepare plans for a project that could be built within the MACC. Mr. Majewski's report contains no opinions on whether another architect in Defendants' position would have been able to furnish plans for a project that could have been completed within the MACC. Rather, Mr. Majewski's opinion is limited to noting that another similarly situated architect would have concluded at an earlier date that it could not comply with the MACC, which is a separate issue, and which is addressed in section B of the breach of contract discussion above.

In addition, the contract language limits any warranties concerning the project's cost. Article 5 of the contract, for example, states that "the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from the Project budget proposed, established, or approved by the Owner, or from any Statement of Probable Construction Cost or other cost estimate or evaluation prepared by the Architect." Ex. B to Defendants' SJ Motion at ¶ 5.2.1. While the project never reached the bid phase, this language, combined with the various contractual provisions addressing situations in which the MACC might be exceeded and concerning the parties' options should the MACC be exceeded, makes it clear that the parties were well-aware that the MACC could be exceeded and they took this fact into account when they drafted the contract. Considering the contract's contemplation of the possibility of costs

exceeding the MACC and Plaintiff's failure to proffer any evidence that Defendants did not apply the proper standard of care in attempting to comply with the MACC, the Court holds that there is no evidence to suggest that Defendants breached the warranty in the contract by failing to provide MCMC with plans for a project that could be constructed within the MACC or by continually failing to comply with the MACC.  Accordingly, Defendants' SJ Motion will be granted on this issue.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (Doc. No. 73) is DENIED as to the following breach of contract claims:

> A) that Defendants failed to provide a refined statement of probable construction cost at the completion of the Design Development Phase of the project;
>
> B) that Defendants failed to notify Plaintiff immediately when they determined that the project cost would exceed the MACC;
>
> C) that Defendants failed to provide additional cost estimates following requests by Plaintiff.

(2) Defendants' Motion for Summary Judgment is GRANTED as to the claim that Defendants breached the contract by failing to provide Plaintiff with plans for a project that could be built within the MACC, and as to Plaintiff's breach of warranty claim, and a separate partial summary judgment will be entered in favor of Defendants Salmon Bay Design Group, Professional Practice Environments, Inc., John Crane, and Daniel R. Dierks on these claims.

*[signature: James A. Parker]*
SENIOR UNITED STATES DISTRICT JUDGE